# EXHIBIT 50

# QUINNIPIAC UNIVERSITY

# GUIDELINES AND PROCEDURES FOR

# STUDENTS WITH DISABILITIES

**January, 2015**

JD000978

# Table of Contents

**Section 1 – Policies and Procedures for Students with Disabilities**            4
   1.01  Policy Statement on Disabilities                                         5
   1.02  Procedures for Accessing Services                                        6
   1.03  Housing Accommodations Policy - Undergraduates Only                      6
   1.04  Institutional Rights and Responsibilities                                7
   1.05  Responsibilities of the Student - Undergraduate and Graduate             8
   1.06  Responsibilities of the Student - School of Law                          9
   1.07  Responsibilities of the Faculty - Undergraduate and Graduate             9
   1.08  Responsibilities of the Faculty - School of Law                         10
   1.09  Undergraduate Eligibility for Financial Aid                             10
   1.10  Course Substitutions for Undergraduate Students                         11

**Section 2 - Criteria for Comprehensive Documentation of Disabilities**
             **in Adolescents and Adults At Quinnipiac University**   13
   2.01  Introduction                                                            14
   2.02  Documentation Requirements
      2.02A.  Qualifications of the Evaluator                                 15
      2.02B.  Recency of Documentation                                        16
      2.02C.  Comprehensiveness of Documentation                              17
      2.02D.  Recommendations for Accommodation                               19
   2.03  Documentation Guidelines for Specific Disabilities
      2.03A.  Learning Disabilities                                            20
         1.  Brief Overview                                              20
         2.  Criteria for Comprehensive Documentation of
            Learning Disabilities                                    21
         3.  Recommendations for Parents and Students                    26
      2.03B.  Attention Deficit Hyperactivity Disorder                         28
         1.  Brief Overview                                              28
         2.  Criteria for Comprehensive Documentation of
            ADHD                                                     29
         3.  Recommendations for Parents and Students                    35
      2.03C.  Psychological Disabilities                                       37
         1.  Brief Overview                                              37
         2.  Criteria for Comprehensive Documentation of
            Psychological Disabilities                               38
         3.  Recommendations for Parents and Students                    42
      2.03D.  Acquired Brain Injury/Traumatic Brain Injury                     45
      2.03E.  Sensory Conditions                                               46
      2.03F.  Organic Medical Conditions                                      47
      2.03G.  Other Disabilities                                              47

JD000979

**Section 3 - ADA/504 Grievance Procedure**                                         48
    3.01  Grievances
    3.02  Informal Procedure
    3.03  Formal Procedure

Appendix 1:  General Recommendations for Students and Parents  52
Appendix 2:  Resources and Organizations  53

JD000980

# SECTION 1

## Policies and Procedures

## for

## Students with Disabilities

## Quinnipiac University

JD000981

**1.01  Policy Statement on Disabilities**

Quinnipiac University is committed to providing equal educational opportunities and full participation for students with disabilities.  No qualified student will be excluded from participation in any University program or be subject to any form of discrimination based on disability.

 Quinnipiac University recognizes its obligations to comply with the Americans with Disabilities Act of 1990, hereafter referred to as ADA, and Section 504 of the Rehabilitation Act of 1973, hereafter referred to as Section 504.  The ADA states:
"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." (28 C.F.R. § 36.201a) Section 504 states: "No otherwise qualified individual with a disability [...] shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." (29 U.S.C. § 794)  Consistent with its responsibilities, Quinnipiac University provides reasonable accommodations to promote equal educational opportunity.

The University provides staff members to ensure compliance with the ADA and Section 504.  These staff members work directly with students, faculty, and staff regarding reasonable accommodations and other assistance as needed.  The University also maintains a grievance procedure for those students with disabilities who seek resolution of particular issues and desire a more formalized process.  The grievance procedure is discussed in Section 3: ADA/504 Grievance Procedure.

Undergraduate and graduate students contact:    Students of the School of Law contact:
Coordinator of Learning Services    Associate Dean of Students
The Learning Commons – ABL-TLC    LW-CCS
Arnold Bernhard Library – north wing    School of Law 310K
203-582-5390    203-582-3220

Students of the Frank H. Netter School of Medicine contact:
Associate Dean for Student Affairs
NH-MED
Medicine, Nursing, Health Sciences 211H
203-582-6508

JD000982

**1.02  Procedures for Accessing Services**

The University provides reasonable accommodations to students with disabilities in order to reduce or eliminate any disadvantages that may exist because of the disability.  For example, the University may decide to permit a student with a disability to opt out of a foreign language requirement.  However, the University is not required by law or this policy to waive specific courses or academic requirements it considers essential to a particular program or degree if it would result in a fundamental alteration of the nature of the program or the degree.

- Students requesting accommodations must self-identify and provide the documentation described in Section 2 of this Policy to support their request for a reasonable accommodation.

- It is the responsibility of the student requesting a reasonable accommodation to present current documentation and request an accommodation in a timely manner at the beginning of the academic semester.

- Eligibility for reasonable accommodations will be determined on an individual case-by-case basis.

**1.03  Housing Accommodations Policy - Undergraduates Only**

The University is required to provide reasonable accommodations to students with documented disabilities.  A student who requests housing or meal plan accommodations must contact the Associate Director of Residential Life and the student must submit all relevant information pertaining to the need for the accommodation.  The student will be required to complete a Housing Accommodations Form which is available from the Office of Residential Life. Documentation in support of the request for accommodation may be mailed, faxed, or brought to the Office of Residential Life by the student.

Individual accommodations will depend on various factors including the nature and severity of the documented disability and available rooms.  Consideration will be given to the specific accommodation requested by the student, but there can be no assurances that the student's specific request will be granted if the University determines that it is not feasible or another accommodation is appropriate under the circumstances.

JD000983

**1.04  Institutional Rights and Responsibilities**

Quinnipiac University through its dedicated offices has the <u>responsibility</u> to:

  1.  ensure that University courses, programs, services, activities, and facilities, when viewed in their entirety, are offered in the most integrated and appropriate setting.

  2.  provide information regarding policies and procedures to students with disabilities and assure its availability in accessible formats upon request.

  3.  evaluate students on their abilities, not their disabilities.

  4.  provide reasonable and appropriate accommodations, academic adjustments, and/or auxiliary aids for students with disabilities upon a timely request by students.

  5.  maintain appropriate confidentiality of records and communication concerning students with disabilities except where disclosure is required by law or authorized by the student.

More specifically, personnel in these dedicated offices have the <u>responsibility</u> to:

  1.  assist students with disabilities who self-identify and meet University criteria for eligibility to receive reasonable and appropriate accommodations, academic adjustments, and/or auxiliary aids determined on a case-by-case basis.

  2.  assure appropriate confidentiality of all information pertaining to a student's disability.

  3.  assure that the students receive appropriate reasonable accommodations based on documentation of the disability.

  4.  interact with the faculty, when appropriate.

  5.  inform students with disabilities of University policies and procedures for filing a formal grievance. [See Section 3 – ADA/504 Grievance Procedure]

Serving students, the Coordinator of Learning Services and/or the Assistant Dean for Student Affairs, has the <u>right</u> to:

  1.  require that students with disabilities conform with the University's academic standards.

7

2.  as needed, request from a student current documentation completed by appropriate professional(s) to verify the need for reasonable accommodations, academic adjustments, and/or auxiliary aids. [See Section 2 - Criteria for Comprehensive Documentation of Disabilities]

3.  review the student's need for reasonable accommodations, academic adjustments, and/or auxiliary aids with the professional(s) providing the documentation.  This review is only conducted with the student's signed consent authorizing such a discussion.

4.  select among equally effective and appropriate accommodations, adjustments, and/or auxiliary aids in consultation with the student.

5.  deny a request for specific accommodations, academic adjustments, and/or auxiliary aids if the documentation does not identify a specific disability, fails to verify the need for the requested services, is not provided in a timely manner or does not identify the specific accommodation.

6.  refuse to provide an accommodation, adjustment, and/or auxiliary aid that is inappropriate or unreasonable including any that:

- constitute a substantial change or fundamental alteration to an essential element of a course or program
- pose an undue burden on the University.


## 1.05  Responsibilities of the Student -- Undergraduate and Graduate

1.  Contact the Coordinator of Learning Services at the beginning of each semester so that appropriate reasonable accommodations can be made in a timely manner.

2.  Provide to the Coordinator appropriate medical, psychological, psychoeducational, or neuropsychological documentation indicating the student's disability and suggested reasonable accommodations.

3.  Provide signed consent authorizing the Coordinator to discuss the student's need for reasonable accommodations, academic adjustments, and/or auxiliary aids with the professional(s) providing the documentation.

4.  Meet the time lines and procedural requirements established by the Coordinator for scheduling exams and requesting assistance.  If the student with a disability fails to provide adequate notice of the need for space and/or assistance, the Coordinator will still attempt to provide the accommodation to the extent possible under the circumstances.

JD000985

**1.06  Responsibilities of the Student -- School of Law**

1.  Contact the Associate Dean of Students - School of Law at the time of enrollment in the School of Law so that appropriate accommodations can be made in a timely manner.  The student is also responsible for reviewing the need for accommodation on a semester by semester basis with the Associate Dean of Students.

2.  Provide to the Associate Dean of Students appropriate medical, psychological, psychoeducational, or neuropsychological documentation indicating the student's disability and suggested reasonable accommodations.

3.  Provide signed consent authorizing the Associate Dean of Students or designee to discuss the student's need for reasonable accommodations, academic adjustments, and/or auxiliary aids with the professional(s) providing the documentation.

4.  Meet the time lines and procedural requirements established by the School of Law for scheduling exams and requesting assistance.  If the student with a disability fails to provide adequate notice of the need for space and/or assistance, the Associate Dean of Students will attempt to provide the accommodation to the extent possible under the circumstances.

**1.07  Responsibilities of the Faculty Member - Undergraduate and Graduate**

1.  Provide only the accommodations that are recommended by the Coordinator of Learning Services.

2.  Discuss with the Coordinator any concerns related to the accommodations that have been requested by the student during the initial contact with the faculty member.

3.  With respect to examinations in undergraduate and graduate courses,

   a.  Discuss the conditions under which the exam is to be administered.

   b.  If the student's exam is to be administered outside of the class, ensure the timely delivery of the exam, along with all necessary instructions and materials for proper administration.  The faculty member may also make arrangements with the student for the delivery and return of the exam.

4.  Ensure the appropriate confidentiality of information regarding students with disabilities.

9

JD000986

5. Include a statement on syllabi similar to the following:

## Faculty Syllabi Statement

Students with disabilities who wish to request reasonable accommodations should contact the Coordinator of Learning Services in Arnold Bernhard Library – north wing at (203) 582-5390. Quinnipiac University complies with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.


**1.08  Responsibilities of the Faculty Member - School of Law**

1.  Provide only the accommodations that are recommended by the Associate Dean of Students.

2.  Discuss with the Associate Dean of Students any concerns related to the accommodations that have been requested by the student during the initial contact with the faculty member.

3.  With respect to examinations in law courses,
      a.  Discuss the conditions under which the exam is to be administered.

      b.  Ensure the timely delivery of the exam, along with all necessary instructions and materials for proper administration to the Associate Dean.

4.  Ensure the appropriate confidentiality of information regarding students with disabilities.

5.  Include a statement on syllabi similar to the following:

## Faculty Syllabi Statement

Students with disabilities who wish to request reasonable accommodations should contact: Associate Dean of Students, School of Law and Education, 310 K (203) 582-3220.  Quinnipiac University complies with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.


**1.09  Undergraduate Eligibility for Financial Aid**

Quinnipiac University permits students with disabilities to take less than a full-time course load as a reasonable accommodation, if necessary.  Students should discuss full-time course load requirements with an academic advisor for their respective program and the impact this might have on financial aid with a financial aid counselor.

Students should be aware that federal Pell Grants will be prorated based on the number of credits taken, and that a student's financial aid budget will also be reduced accordingly.  In addition, students must take at least six credits to qualify for the federal Stafford Loan Program.

JD000987

Students who carry less than a full-time load per semester may still be eligible for student financial aid status.  In such a case, these procedures must be followed:

　　1.  Students must provide appropriate documentation to the Coordinator of Learning Services to show that their disability substantially limits one or more major life functions and it precludes them from taking a full-time course load.

　　2.  If a student is registered at the beginning of a semester for less than a full-time credit load because of an accommodation for a disability, this must be verified by the Coordinator of Learning Services.  Students must contact the Coordinator for this verification **NO LATER THAN** the last day of the University's ADD/DROP period.

　　3.  If a student is registered at the beginning of a semester for a full-time course load, but, in order to accommodate his/her disability, withdraws from a course within the approved drop period, the student must contact the Coordinator for this verification **NO LATER THAN** the last day of the University's ADD/DROP period.

　　4.  The Coordinator will notify the Financial Aid Office **each semester** of those students with disabilities who are carrying less than a full-time course load and who are eligible for financial aid consideration under these procedures.

**Students should be aware that, as always, eligibility for financial aid depends upon satisfactory academic progress.**

### 1.10  Course Substitutions for Undergraduate Students

**Policy**:   Recognizing that certain students with disabilities may not be able to achieve academic success in the quantitative **or** foreign language area with or without reasonable accommodations, the University may permit the substitution of specific courses from its university (core) curriculum[1] as an accommodation.  Because these requirements are important parts of a program of study, each case will be carefully considered on an individual basis before a decision is made by the appropriate Dean.

**Procedures**:   The procedures set forth below must be followed if a student with a disability is seeking a modification of either the University's mathematics or foreign language requirement:

　　1.  The student must file a petition with the Coordinator of Learning Services.  The petition process should begin as soon as there is strong objective evidence (e.g., taking the course and using all resources without success) that the student will be unable to

---

[1] The university curriculum is in effect for freshman students entering fall 2006; the core curriculum is in effect for students entering prior to fall 2006 – see catalogue for details.

JD000988

fulfill the requirement.

2.  The student must provide the Coordinator of Learning Services with documentation that satisfies the requirements of Section 2.02 of this Policy.

Upon completion of these steps, the documentation and the supporting evidence from the case history are reviewed by the Coordinator of Learning Services.  If there is evidence that satisfies the Coordinator of Learning Services that a substitution is warranted, the Coordinator will consult with the appropriate Dean.  The student will be notified in a timely manner of the final decision rendered by the Dean.  The student may appeal an adverse decision through the Grievance Procedure described in Section 3 of this Policy.

Any student who receives a course substitution for mathematics or foreign language is expected to fulfill the University's core requirements as follows:

Mathematics Requirement

Students with math learning disabilities who are majoring in the Liberal Arts or Communications should contact the Coordinator of Learning Services to enroll in a designated section of MA 110, Contemporary Mathematics, a smaller than typical class that is geared toward the student with a math learning disability.  This section will be offered only once a year.

Foreign Language Requirement

For majors in the College of Liberal Arts or the School of Communications, the foreign language requirement may be fulfilled by taking other courses chosen in consultation with the Coordinator of Learning Services and the Dean of the appropriate college/school.  A foreign language course substitution may have ramifications in the future (i.e., admission to graduate school).  Students from the School of Business majoring in International Business will not be allowed a course substitution for foreign language since students must complete 6 credits of 200-level foreign language courses.

12

JD000989

# SECTION 2

## Criteria for Comprehensive

## Documentation of Disabilities

## in Adolescents and Adults

## at Quinnipiac University

JD000990

## 2.01  Introduction

This document provides students, parents, professional diagnosticians external to Quinnipiac University, and service providers within Quinnipiac University with a common understanding and knowledge base of those components of documentation which are necessary to validate the existence of a disability, to evaluate its impact on the student's educational performance, and to justify the need for reasonable accommodations for students attending Quinnipiac University.

Under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973, individuals with disabilities are guaranteed certain protections and rights of equal access to programs and services.  However, in order to fall within the laws' protections, an individual must have a physical or mental impairment that *substantially limits* one or more major life activities. Thus the student's documentation must indicate that the disability substantially limits some major life activity, including learning.  The following information is provided in the interest of assuring that all documentation presented by the student is appropriate to verify eligibility and to support requests for reasonable accommodations, academic adjustments, and/or auxiliary aids.

The information and documentation that establishes a disability must be comprehensive in order to make it possible for a student to obtain appropriate accommodations in a timely fashion.  This document presents requirements in four important areas: 1) qualifications of the evaluator, 2) appropriate clinical documentation to substantiate the specific disability, 3) recency of documentation, and 4) evidence to establish a rationale supporting the need for accommodations.

Quinnipiac University has a responsibility to maintain confidentiality of the evaluation and may not release any part of the documentation without the student's informed and written consent. Disability information is kept in a separate, secure location and is not included in a student's general education records.

Students who choose not to disclose their disability forfeit all academic accommodations, including test accommodations.  Students who choose not to disclose their disability but later change their minds as the semester progresses must allow at least two weeks for accommodations to begin.  There will be no retroactive consideration or adjustment to grades. **It is important to note that Quinnipiac University does not evaluate students for a disability nor does it provide documentation of a disability for students requesting accommodations. It is up to the students to provide their own documentation of a disability from a qualified diagnostician.**

14

JD000991

**2.02  Documentation Requirements**

**2.02A  Qualifications of the Evaluator**

Professionals conducting assessments, rendering diagnoses of specific disabilities, and making recommendations for appropriate accommodations must be qualified to do so.  Comprehensive training with regard to the specific disability being addressed and relevant experience with an adolescent/adult population are essential.

The name, title and professional credentials of the evaluator, including information about license or certification as well as the area of specialization, employment and state in which the individual practices must be clearly stated in the documentation.  All reports should be on letterhead, typed, dated, signed and otherwise legible.  It is of utmost importance that evaluators are sensitive and respectful of cultural and linguistic differences in adolescents/adults during the assessment process.  It is not considered appropriate for professionals to evaluate members of their own families.

Recommendations for adolescents/adults who must obtain an independent diagnostic evaluation are presented at the end of each specific disability section to assist them in finding and working with a qualified professional in regard to documentation.

*Learning Disabilities* ~ The following professionals would generally be considered qualified to evaluate Specific Learning Disabilities provided they have additional training and experience in differential diagnosis and the assessment of learning problems in adolescents/adults: Clinical Psychologists, Educational Psychologists, School Psychologists, Neuropsychologists, and Learning Disabilities Specialists.  Use of diagnostic terminology indicating a learning disability by someone whose training and experience are not in these fields is not acceptable.

*Attention Deficit Hyperactivity Disorder (ADHD)* ~ Professionals conducting assessments and rendering diagnoses of ADHD must have training in differential diagnosis and pertinent psychological disorders.  The following professionals would generally be considered qualified to evaluate and diagnose ADHD provided they have direct experience with an adolescent/adult ADHD population: Clinical Psychologists, Neuropsychologists, Psychiatrists, and other relevantly trained Medical Doctors.  A clinical team approach consisting of a variety of educational, medical, and counseling professionals with training in the evaluation of ADHD in adolescents/adults may be important.  Use of diagnostic terminology indicating an ADHD by someone whose training and experience are not in these fields is not acceptable.

*Psychological Disabilities* ~ Professionals conducting assessments and rendering diagnoses of psychological disabilities must have training in differential diagnosis and the full range of psychological disorders.  The following professionals would generally be considered qualified to evaluate and diagnose psychological disabilities provided they have comprehensive training in differential diagnosis and direct experience with an adolescent/adult population:

15

JD000992

Licensed Clinical Psychologists, Licensed Clinical Social Workers, Psychiatrists, Advanced Practice Registered Nurses or Clinical Nurse Specialists in Psychiatry and other relevantly trained Medical Doctors.  Use of diagnostic terminology indicating a psychological disability by someone whose training and experience are not in these fields is not acceptable.

*Acquired Brain Injury (ABI)/Traumatic Brain Injury (TBI)* ~ Professionals conducting assessments and rendering diagnoses of ABI/TBI must have post-doctoral training in identification and treatment of ABI/TBI.  The following professionals would generally be considered qualified to evaluate and develop learning strategies for persons with ABI/TBI: Neuropsychologists, Educational Psychologists with post graduate concentration in cognitive strategy development and remediation, and relevantly trained Clinical Psychologists.  Use of diagnostic terminology indicating an ABI/TBI by someone whose training and experience are not in these fields is not acceptable.

*Sensory Conditions*
> *Blindness or low vision* ~ Professionals conducting assessments and rendering diagnoses of blindness or low vision include Ophthalmologists.  Optometrists provide information regarding the measurement of visual acuity, tracking and fusion difficulties.
> *Deaf/Hard of Hearing/Hearing Impaired* ~ Physicians including Otorhinolaryngologists and Otologists are qualified to provide diagnosis and treatment of hearing disorders.  Audiologists may provide current audiograms.

*Organic Medical Conditions*
> *Physical Mobility/Dexterity* ~ Any physical disability is considered to be in the medical domain and requires the expertise of a physician or other pertinent licensed medical personnel.
> *Health-Related Illness* ~ Any illness, acute or chronic enough to be regarded as a disability, is considered to be in the medical domain and requires the expertise of a physician or other pertinent licensed medical personnel.

## 2.02B  Recency of Documentation

Because the provision of all reasonable accommodations and services is based upon Quinnipiac University's assessment of the current impact of the disability on academic performance, it is in the student's best interest to provide recent and appropriate documentation.  Documentation must reflect the current impact the disability has on the student's functioning at the postsecondary level.  If documentation is inadequate in scope or content, or does not address the student's current level of functioning and need for accommodations, reevaluation may be required. Furthermore, observed changes may have occurred in the student's performance, or new medication may have been prescribed or discontinued since the previous assessment was

16

JD000993

conducted.  In such cases, it will be necessary to update the evaluation report.  The update must include a detailed assessment of the current impact of the disability, an interpretive integrated summary of relevant information, a rationale for ongoing services and accommodations, and previous diagnostic information.  If necessary, the Coordinator of Learning Services at Quinnipiac University will recommend what aspects of the documentation need to be updated or augmented.

## 2.02C  Comprehensiveness of the Documentation

Disability documentation must verify the nature and extent of the disability in accordance with current professional standards and techniques, and it must clearly substantiate the need for all of the student's specific accommodation requests.  Documentation should validate the need for reasonable accommodations based on the individual's current level of functioning in the educational setting.  Students requesting reasonable accommodations for the manifestations of multiple disabilities must provide evidence of all such conditions.  All reports should be on letterhead, typed, dated, signed and legible.  It should integrate the various views regarding a student's specific functioning abilities and the resulting impact of these abilities as they relate to postsecondary educational demands.  In a public school system, the Planning and Placement Team recommends the type of evaluations necessary for the educational programming of a student and provides a special education diagnosis.  A diagnostic report would synthesize all of the diagnostic information culled from the individual reports of the team members and include the resulting diagnosis.

Quinnipiac University has the discretion to require additional documentation if it is determined that the existing documentation is incomplete or inadequate to ascertain the extent of the disability or the need for reasonable accommodations.  With the student's written permission, a telephone consultation with an evaluator to update or clarify information regarding the disability may be sufficient to complete the existing documentation.  Any cost incurred in obtaining additional documentation when the original records are inadequate for postsecondary purposes is borne by the student.  If the existing documentation is complete but the postsecondary institution desires a second professional opinion, the postsecondary institution bears the cost.

Comprehensive disability documentation should include the following components:
1. Evidence of existing impairment
2. Background information
3. Specific diagnosis
4. Integrated summary

1.  Evidence of Existing Impairment
Statement of Presenting Problem(s): A history of the individual's presenting problem(s) should be provided, including evidence of ongoing difficulties/behaviors that significantly impact functioning.

JD000994

2.  Background Information

Information collected for the background information summary should be culled from a variety of sources (e.g., interview, review of records) and, whenever feasible, should consist of more than a self-report.  Information from third party sources is often invaluable.  The diagnostician, using professional judgment as to which areas are relevant, should review pertinent records and conduct an interview which may include, but not necessarily be limited to, the following: history of presenting problem(s)/symptom(s); any significant medical, developmental, psychosocial and employment histories; family history (including primary language of the home and the student's current level of English fluency); review of pertinent academic history of elementary, secondary, and postsecondary education; review of prior evaluation reports; description of current functional limitations pertaining to an educational setting that are presumably a direct result of the presenting problems; and relevant history of prior treatment, therapy, interventions, or accommodations.

3.  Specific Diagnosis

The report must include a specific diagnosis of the disability by a qualified evaluator.  It is important to rule out alternative explanations for problems such as emotional, attentional, or motivational issues that may be interfering with learning but do not constitute a specific disability.  If the data indicate that a specific disability is not present, the evaluator should state that conclusion in the report.  The evaluator is encouraged to use direct language in the diagnosis and documentation of a specific disability, avoiding the use of terms such as "suggests" or "is indicative of."  It is important to note that the public school system is qualified to diagnose only educationally related disabilities in accordance with state guidelines (e.g., learning disabilities, speech and language impairment).  The classification of Serious Emotional Disturbance (SED), that is used in the school systems, is not considered to be an acceptable diagnosis at the postsecondary level.

4.  Integrated Summary

A well-written summary based on a comprehensive evaluation process is a necessary component of the report.  Assessment instruments and the data they provide do not diagnose; rather, they provide important elements that must be interpreted and integrated by the evaluator with background information, observations of the student during the testing situation, and the current context.  It is essential, therefore, that professional judgment be used in the development of a summary.  The summary should include: indication of the substantial limitation to learning or other major life activity presented by the specific disability and the degree to which it impacts the individual in the learning context for which accommodations are being requested; indication of whether or not the student was evaluated while on medication and whether or not there is a positive response to the prescribed treatment; demonstration of the evaluator's having ruled out alternative explanations for the presenting problems; and indication as to why specific accommodations are needed, how the effects of the specific disability can be accommodated, and any record of prior accommodation or auxiliary aids.

JD000995

**2.02D  Recommendations for Accommodations**

Accommodation needs can change over time and are not always identified through the initial diagnostic process.  The evaluator(s) must describe the impact, if any, of the diagnosed disability on a specific major life activity as well as the degree of impact on the individual.  The diagnostic report must include specific recommendations for accommodations that are reasonable.  When possible, a detailed explanation must be provided as to why each accommodation is recommended and must be correlated with specific functional limitations determined through interview, observation, and/or testing.  Although prior documentation may have been useful in determining appropriate services in the past, to further facilitate the process of requesting accommodations at the postsecondary level, current documentation must validate the need for services based on the individual's present level of functioning in the educational setting.  The documentation must include any record of prior accommodations or auxiliary aids, including information about specific conditions under which the accommodations were used (e.g., standardized testing, final exams, licensing or certification examinations) and whether or not they benefited the individual).  A school plan such as an IEP or a 504 Plan is insufficient documentation, in and of itself, but can be included as part of a more comprehensive evaluative report.  However, a prior history of accommodations, without demonstration of a current need, does not, in itself, warrant the provision of a like accommodation.  If no prior accommodations were provided, the qualified professional and/or the individual must include a detailed explanation as to why no accommodations were used in the past and why accommodations are needed at this time. Reasonable accommodation(s) may help to ameliorate the disability.  The determination for reasonable accommodation(s) rests with Quinnipiac University working in collaboration with the individual with the disability and, when appropriate, university faculty.  Accommodations may vary based on course content and/or academic programs.  If accommodations are not clearly identified in a diagnostic report, the Coordinator of Learning Services will seek clarification and, if necessary, additional information.

19

JD000996

**2.03  Documentation Guidelines for Specific Disabilities**

**2.03A  Learning Disabilities**

**2.03A1  Brief Overview**
(For more detail please refer to Section 2.03A2 Criteria for Comprehensive Documentation of
Learning Disabilities.)

Students requesting accommodation on the basis of a Specific Learning Disability must provide
current (within the last three years) documentation from a professional who has undergone
comprehensive training and has relevant experience in the assessment of learning problems in
adolescents and/or adults (e.g., Clinical or Educational Psychologists, School Psychologists,
Neuropsychologists, and Learning Disabilities Specialists).  In addition to the requirements
specified above, documentation for students requesting accommodations on the basis of a
Learning Disability must include, but is not limited to:

a)  An interview including a description of the presenting problem(s); any significant
developmental, medical, psychosocial and employment histories; family history
(including primary language of the home and the student's current level of English fluency); and
a discussion of dual diagnosis where indicated.

b)  A complete assessment of intellectual functioning/aptitude as measured by the Wechsler
Adult Intelligence Scale-IV (WAIS-IV) with standard and scaled scores, including subtest scores.
The Woodcock-Johnson Psychoeducational Battery-III: Tests of Cognitive Ability or the
Stanford-Binet Intelligence Scales, Fifth Edition are also acceptable.  The Kaufman Brief
Intelligence Test (KBIT-2) and the Slosson Intelligence Test - Revised (SIT-3) are NOT
comprehensive measures and therefore are not suitable for use in the initial diagnosis of a
Learning Disability.

c)  A comprehensive academic achievement battery that measures current levels of functioning
in Reading (decoding and comprehension), Mathematics, Oral Language, and Written Language
[e.g., Woodcock-Johnson Psychoeducational Battery - III: Tests of Achievement,
Wechsler Individual Achievement Test-III (WIAT-III), Stanford Test of Academic Skills (TASK),
Scholastic Abilities Test for Adults (SATA), or specific achievement tests such as
Test of Written Language-4 (TOWL-4), Woodcock Reading Mastery Tests-Third Edition,
Stanford Diagnostic Mathematics Test].  All standard scores, standard deviations and
percentiles must be reported for those subtests administered.  The Wide Range Achievement
Test-4 (WRAT-4) is NOT a comprehensive measure of achievement and is therefore not suitable.
Test selection must be guided by the age of the student and the test norms.  Tests used should
also be technically sound (e.g., statistically reliable and valid) and standardized for use with an
adolescent/adult population.

20

JD000997

d)  An assessment of specific areas of information processing (e.g., short- and long-term memory, sequential memory, sequential and simultaneous processing, executive functioning, processing speed, auditory and visual perception/processing, and motor ability).  Information from subtests on the WAIS-IV, the Woodcock-Johnson Psychoeducational Battery - III: Tests of Cognitive Ability, or the Detroit Tests of Learning Aptitude - Adult (DTLA-A), as well as other instruments relevant to the presenting learning problem(s) may be used to address these areas.

e)  Other assessment measures such as non-standard measures and informal assessment procedures or observations may be helpful in determining performance across a variety of domains.  Formal assessment instruments may be integrated with these types of measures to help determine a Learning Disability and differentiate it from co-existing neurological and/or psychological disorders (i.e., to establish a differential diagnosis).  In addition to standardized tests, it is also very useful to include informal observations of the student during the test administration.

f)  A diagnosis of a Specific Learning Disability.  Individual "learning styles," "learning differences," "academic problems," and "test difficulty or anxiety," in and of themselves, do not constitute a Learning Disability.  It is important for the evaluator to demonstrate that alternative explanations for academic problems as a result of poor education, poor motivation and/or study skills, emotional problems, attentional problems, and cultural/language issues that may be interfering with learning but do not constitute a Learning Disability have been ruled out.

g)  An indication of how patterns in the student's cognitive ability, achievement, and information processing reflect the presence of a Learning Disability.

h)  An integrated summary which: indicates the substantial limitations to major life activities posed by the Specified Learning Disability, describes the extent to which these limitations impact the academic context for which accommodations are being requested, suggests how the specific effects of the Learning Disability may be accommodated, and then states how the effects of the Learning Disability are mediated by the recommended accommodations.


## 2.03A2  Criteria for Comprehensive Documentation of Learning Disabilities

Introduction

This section provides students, parents, professional diagnosticians external to Quinnipiac University, and service providers with a common understanding and knowledge base of those components of documentation which are necessary to validate a Learning Disability (LD) and to justify the need for reasonable accommodations for students attending Quinnipiac University. The information and documentation that establishes a Learning Disability should be comprehensive in order to make it possible for a student to obtain appropriate accommodations in a timely fashion.

21

JD000998

This section presents requirements in five important areas: 1) qualifications of the evaluator, 2) recency of documentation, 3) appropriate clinical documentation to substantiate the Learning Disability, 4) evidence to establish a rationale supporting the need for accommodations, and 5) confidentiality.  Section 2.03A3 provides recommendations for parents and students to assist them in finding and working with a qualified professional in regard to appropriate documentation.  It also includes a suggested listing of standardized tests for assessing adolescents and adults with suspected Learning Disabilities.

Under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973, individuals with Learning Disabilities are guaranteed certain protections and rights of equal access to programs and services; thus the student's documentation should indicate that the disability substantially limits some major life activity, including learning.  The following information is provided in the interest of assuring that all LD documentation presented by the student is appropriate to verify eligibility and to support requests for accommodations, academic adjustments, and/or auxiliary aids.

Documentation Requirements –  Learning Disabilities

Qualifications of the Evaluator

Professionals conducting assessments, rendering diagnoses of Learning Disabilities, and making recommendations for appropriate accommodations must be qualified to do so.  Comprehensive training and relevant experience with an adolescent and adult LD population are essential.

The name, title, and professional credentials of the evaluator, including information about license or certification as well as the area of specialization, employment, and state in which the individual practices must be clearly stated in the documentation.  For example, the following professionals would generally be considered qualified to evaluate Specific Learning Disabilities provided that they have additional training and experience in evaluating adolescent and adult Learning Disabilities: Clinical Psychologists, Educational Psychologists, School Psychologists, Neuropsychologists, and Learning Disabilities Specialists.  Use of diagnostic terminology indicating a Specific Learning Disability by someone whose training and experience are not in these fields is not acceptable.  It is of utmost importance that evaluators are sensitive and respectful of cultural and linguistic differences in adolescents and adults during the assessment process.  It is not considered appropriate for professionals to evaluate members of their families. All reports should be on letterhead, typed, dated, signed and otherwise legible.

Recency of Documentation

The provision of all reasonable accommodations and services is based upon assessment of the impact of the student's disability on his or her academic performance at a given time in the student's life.  Therefore, it is in the student's best interest to provide recent and appropriate documentation relevant to the student's learning environment.  Quinnipiac University is aware

22

that once a person is diagnosed with a qualified Specific Learning Disability under the Americans with Disabilities Act, the disability is believed to be life-long; however, the severity may change over time.

Flexibility in accepting documentation is important.  In some instances, documentation may be outdated or inadequate in scope or content.  It may not address the student's current level of functioning or need for accommodations because observed changes may have occurred in the student's performance since the previous assessment was conducted.  In such cases, it may be appropriate to update the evaluation report.  Since the purpose of the update is to determine the student's current need for accommodations, the update, conducted by a qualified professional, should include a rationale for ongoing accommodations.

Substantiation of the Learning Disability

Documentation must validate the need for accommodations based on the individual's current level of functioning in the educational setting.  A school plan such as an Individualized Education Program (IEP) or a 504 plan, while insufficient, can be included as part of a more comprehensive assessment battery.  A comprehensive assessment battery and the resulting diagnostic report must include a diagnostic interview, assessment of aptitude, academic achievement, information processing and a diagnosis.

a)  Diagnostic Interview
An evaluation report must include the summary of a comprehensive diagnostic interview. Learning Disabilities are commonly manifested during early childhood, but not always formally diagnosed.  Relevant information regarding the student's academic history and learning processes in elementary, secondary, and postsecondary education must be investigated and documented.  The diagnostician, using professional judgment as to which areas are relevant, should conduct a diagnostic interview which may include: a description of the presenting problem(s); developmental, medical, psycho-social, and employment histories; family history (including primary language of the home and the student's current level of English fluency); and a discussion of dual diagnosis where indicated.

b)  Assessment
The neuropsychological or psychoeducational evaluation for the diagnosis of a Specific Learning Disability must provide clear and specific evidence that a Learning Disability does or does not exist.  Assessment, and any resulting diagnosis, must consist of and be based on a comprehensive assessment battery which does not rely on any one test or subtest.

Evidence of a substantial limitation to learning must be provided.  A list of acceptable tests is included in Section 2.03A3.  Minimally, the domains to be addressed must include the following:

23

(1) Aptitude/Cognitive Ability.  A complete intellectual assessment with all subtests and standard scores reported.

(2) Academic Achievement.  A comprehensive academic achievement battery is essential, with all subtests and standard scores reported for those subtests administered.  The battery must include current levels of academic functioning in relevant areas such as reading (decoding and comprehension), mathematics, and oral and written language.

(3) Information Processing.  Specific areas of information processing (e.g., short-term and long-term memory, sequential memory, auditory and visual perception/processing, processing speed, executive functioning, and motor ability) should be assessed.

Other assessment measures, such as non-standard measures and informal assessment procedures or observations, may be helpful in determining performance across a variety of domains.  Other formal assessment measures may be integrated with the above instruments to help determine a Learning Disability and differentiate it from co-existing neurological and/or psychological disorders (i.e., to establish a differential diagnosis).  In addition to standardized tests, it is also very useful to include informal observations of the student during the test administration.

c) Specific Diagnosis

Nonspecific diagnoses, such as individual "learning styles," "slow reader," "learning differences," "academic problems," and "test difficulty or anxiety," in and of themselves, do not constitute a Learning Disability.  It is important to rule out alternative explanations for problems in learning such as emotional, attentional, or motivational problems that may be interfering with learning but do not constitute a Learning Disability.  The diagnostician must use direct language in the diagnosis and documentation of a Learning Disability, avoiding the use of terms such as "suggests" or "is indicative of."  If the data indicate that a Learning Disability is not present, the evaluator must state that conclusion in the report.

d) Test Scores

Standard scores and/or percentiles must be provided for all normed measures.  Grade equivalents must be accompanied with standard scores and/or percentiles.  The data must logically reflect a substantial limitation to learning for which the student is requesting the accommodation.  The particular profile of the student's strengths and weaknesses must be shown to relate to functional limitations that may necessitate accommodations.  The tests used must be reliable, valid, and standardized for use with an adolescent/adult population.  The test findings must document both the nature and severity of the Learning Disability.  Informal inventories, surveys and direct observation by a qualified professional may be used in tandem with formal tests in order to further develop a clinical hypothesis.

24

e)  Clinical Summary

A well-written diagnostic summary based on a comprehensive evaluation process is a necessary component of the report.  Assessment instruments and the data they provide do not diagnose; rather, they provide important elements that must be integrated by the evaluator with background information, observations of the client during the testing situation, and the current context.  It is essential, therefore, that professional judgment be utilized in the development of a clinical summary.  The clinical summary must include:

(1)  demonstration of the evaluator's having ruled out alternative explanations for academic problems as a result of poor education, poor motivation and/or study skills, emotional problems, attentional problems, and cultural/language differences;

(2)  indication of how patterns in the student's cognitive ability, achievement, and information processing reflect the presence of a Learning Disability;

(3)  indication of the substantial limitation to learning or other major life activity presented by the Learning Disability and the degree to which it impacts the individual in the learning context for which accommodations are being requested;

(4)  indication as to why specific accommodations are needed and how the effects of the specific disability are accommodated.

The summary should also include any record of prior accommodation or auxiliary aids, including any information about specific conditions under which the accommodations were used (e.g., standardized testing, final exams, licensing or certification examinations).

Recommendations for Accommodations

It is important to recognize that accommodation needs can change over time and are not always identified through the initial diagnostic process.  Conversely, a prior history of accommodation, without demonstration of a current need, does not in and of itself warrant the provision of a similar accommodation.

The diagnostic report must include specific recommendations for accommodations as well as an explanation as to why each accommodation is recommended.  The evaluators must describe the impact the diagnosed Learning Disability has on a specific major life activity as well as the degree of significance of this impact on the individual.  The evaluator must support recommendations with specific test results or clinical observations.  If no prior accommodations have been provided, a detailed explanation should be included as to why no accommodations were used in the past and why accommodations are needed at this time.

25

If accommodations are not clearly identified in a diagnostic report, the Coordinator of Learning Services will seek clarification and, if necessary, more information.  The final determination for providing appropriate and reasonable accommodations rests with Quinnipiac University.
In instances where a request for accommodations is denied at Quinnipiac University, a written grievance or appeal procedure can be initiated with the Director of the Learning Center.
[See Section 3 – ADA/504 Grievance Procedure]

Confidentiality

Quinnipiac University has a responsibility to maintain confidentiality of the evaluation and may not release any part of the documentation without the student's informed and written consent.


**2.03A3  Recommendations for Parents and Students – Learning Disabilities**

1.  For assistance in finding a qualified professional:
    - contact the Coordinator of Learning Services at Quinnipiac University to discuss documentation requirements
    - discuss your future plans with the Coordinator and, if additional documentation is required, seek assistance in identifying a qualified professional

2.  In selecting a qualified professional:
    - ask what his/her credentials are
    - ask what experience he/she has working with adults with Learning Disabilities
    - ask if he/she has every worked with the Coordinator of Learning Services at Quinnipiac University

3.  In working with the professional:
    - take a copy of this document to the professional
    - encourage him/her to clarify questions with the Coordinator of Learning Services
    - be prepared to be forthcoming, thorough, and honest with requested information
    - know that professionals must maintain confidentiality with respect to your records and testing information

4.  As follow-up to the assessment by the professional:
    - request a written copy of the assessment report
    - request the opportunity to discuss the results and recommendations
    - request additional resources if you need them
    - maintain a personal file of your records and reports

JD001003

Tests for Assessing Adolescents and Adults with Learning Disabilities

When selecting a battery of tests, it is critical to consider the technical adequacy of instruments including their reliability, validity, and standardization on an appropriate norm group.  The professional judgment of an evaluator in choosing tests is important.  The following list is provided as a helpful resource, but it is not intended to be definitive or exhaustive.

**Aptitude**
- *Wechsler Adult Intelligence Scale - IV* (WAIS-IV)
- *Woodcock-Johnson Psychoeducational Battery - III: Tests of Cognitive Ability*
- *Kaufman Adolescent and Adult Intelligence Test* (*KAIT*)
- *Stanford-Binet Intelligence Scales, Fifth Edition* (SB5)

> The *Slosson Intelligence Test - Revised* and the *Kaufman Brief Intelligence Test-2* are primarily screening devices which are not comprehensive enough to provide the kinds of information necessary to make accommodation decisions.

**Academic Achievement**
- *Wechsler Individual Achievement Test - Third Edition* (WIAT-III)
- *Woodcock-Johnson Psychoeducational Battery - III: Tests of Achievement*
- *Scholastic Abilities Test for Adults* (SATA)
- *Stanford Test of Academic Skills* (TASK)
  or specific achievement tests such as:
  - *Nelson-Denny Reading Test*
  - *Stanford Diagnostic Mathematics Test*
  - *Test of Written Language - 4* (TOWL-4)
  - *Woodcock Reading Mastery Tests - Third Edition* (*WRMT-III*)

Specific achievement tests are useful instruments when administered under standardized conditions and interpreted within the context of other diagnostic information.  The *Wide Range Achievement Test - 4* (WRAT-4) is not a comprehensive measure of achievement and therefore must not be used as the sole measure of achievement.

**Information Processing**
Acceptable instruments include:
- *The Detroit Tests of Learning Aptitude - Fourth Edition* (DTLA-4)
- *The Detroit Tests of Learning Aptitude - Adult* (DTLA-A)
- information from subtests on *WAIS-IV*, and/or
  *Woodcock-Johnson Psychoeducational Battery - III: Tests of Cognitive Ability*.

27

JD001004

## 2.03B  Attention Deficit Hyperactivity Disorder (ADHD)

### 2.03B1  Brief Overview
(For more detail please refer to Section 2.03B2: Criteria of Comprehensive Documentation of ADHD.)

Students requesting accommodations on the basis of ADHD must provide current (within the last three years) documentation by a professional who has undergone comprehensive training and has relevant experience in differential diagnosis and the full range of psychiatric disorders (e.g., Psychologists, Psychiatrists, Neuropsychologists and other relevantly trained Medical Doctors).  In addition to the requirements specified above, documentation for students requesting accommodations on the basis of ADHD must include:

a)  Evidence of early impairment.  The condition must have been exhibited in childhood in more than one setting.

b)  Evidence of current impairment.  A history of the individual's presenting attentional symptoms and evidence of current impulsive/hyperactive or inattentive behaviors that significantly impair functioning in two or more settings must be provided.

c)  An interview.  The interview must contain self-report and third-party information pertaining to: any significant developmental history; family history of ADHD or other educational, learning, physical, or psychological difficulties; relevant medical and medication history; a thorough academic history; and a review of prior psychoeducational test reports to determine whether a pattern of strengths or weaknesses is supportive of attention or learning problems.

d)  Description of relevant employment history.

e)  Description of current functional limitations pertaining to an educational setting that are presumably a direct result of problems with attention.

f)  Evidence of alternative diagnoses or explanations being ruled out.  The documentation must investigate and discuss the possibility of dual diagnoses and alternative or coexisting mood, behavioral, neurological, and/or personality disorders that may confound the ADHD diagnosis.  For a diagnosis of ADHD, the symptoms may not occur exclusively during the course of a Pervasive Developmental Disorder, Schizophrenia, or other Psychotic Disorder, and are not better accounted for by another mental disorder (e.g., Mood Disorder, Anxiety Disorder, Dissociative Disorder, or a Personality Disorder).

28

g) A discussion of the neuropsychological or psychoeducational assessments administered to determine the current impact of the disorder on the individual's ability to function in an academic setting.  Such data should include standard scores, standard deviations and percentiles reported in table format for those subtests administered.

h) A specific psychiatric diagnosis as per the *Diagnostic and Statistical Manual Of Mental Disorders, Fifth Edition,* (DSM-5) of the American Psychiatric Association (2013). Symptoms of hyperactivity/impulsivity which were present in childhood and the current symptoms which have been present for at least the past six months and which impair functioning in two or more settings (e.g., school, work, home) must also be identified.

i) An indication of whether or not the student was evaluated while on medication, and whether or not the prescribed treatment produced a positive response.

j) Prescribed medications, dosages and schedules, including any possible side effects, which may influence the types of accommodations provided.

k) An integrated summary which: indicates the substantial limitations to major life activities posed by the disability, describes the extent to which these limitations would impact the academic context for which accommodations are being requested, suggests how the specific effects of the disability may be accommodated, and states how the effects of ADHD are mediated by the recommended accommodations.


**2.03B2  Criteria for Comprehensive Documentation of ADHD**

<u>Introduction</u>

Although the more generic term Attention Deficit Disorder (ADD) is frequently used, the official nomenclature in the 2013 American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition,* (DSM-5) is Attention- Deficit/Hyperactivity Disorder (ADHD) which is used in this document.  This document provides students, parents, professional diagnosticians external to Quinnipiac University, and service providers with a common understanding and knowledge base of the components of documentation which are necessary to validate the existence of ADHD and its impact on the individual's educational performance and to justify the need for reasonable accommodations for students attending Quinnipiac University. The information and documentation that establishes this disorder must be comprehensive in order to make it possible for a student to obtain appropriate accommodations in a timely fashion.

JD001006

This document presents requirements in five important areas: 1) qualifications of the evaluator, 2) recency of documentation, 3) comprehensiveness of the documentation to substantiate the ADHD, 4) evidence to establish a rationale to support the need for accommodations, and 5) confidentiality.  Section 2.03B3 provides recommendations for parents and students to assist them in finding and working with a qualified professional in regard to this documentation.

Under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973, individuals with disabilities are protected from discrimination and assured services. In order to establish that an individual is covered under the ADA, the documentation must indicate that the disability substantially limits some major life activity, including learning.  The following documentation requirements are provided in the interest of assuring that documentation of ADHD demonstrates an impact on a major life activity and supports the request for accommodations, academic adjustments, and/or auxiliary aids.

Documentation Requirements - ADHD

Qualifications of the Evaluator

Professionals conducting assessments, rendering diagnoses of ADHD, and making recommendations for appropriate accommodations must be qualified to do so.  Comprehensive training and relevant experience in differential diagnosis and the full range of psychological disorders are essential.  The name, title, and professional credentials of the evaluator, including information about license or certification, as well as the area of specialization, employment, and state in which the individual practices must be clearly stated in the documentation.  All reports must be on letterhead, typed, dated, signed, and otherwise legible.  The following professionals would generally be considered qualified to evaluate and diagnose ADHD provided they have comprehensive training in the differential diagnosis of ADHD and direct experience with an adolescent or adult ADHD population: Clinical Psychologists, Psychiatrists, Neuropsychologists, and other relevantly trained Medical Doctors.  It may be appropriate to use a clinical team approach consisting of a variety of educational, medical, and counseling professionals with training in the evaluation of ADHD in adolescents and adults.

Use of diagnostic terminology indicating an ADHD by someone whose training and experience are not in these fields is not acceptable.  It is also not considered appropriate for professionals to evaluate members of their own families.

Recency of Documentation

Because the provision of all reasonable accommodations and services is based upon Quinnipiac University's assessment of the current impact of the disability on academic performance, it is in the student's best interest to provide recent and appropriate documentation.  In most cases, this means that a diagnostic evaluation must have been completed within the past three years.

JD001007

Flexibility in accepting documentation which exceeds a three-year period may be important under certain conditions, if the previous assessment is applicable to Quinnipiac University.  If documentation is inadequate in scope or content, or does not address the student's current level of functioning and need for accommodations, reevaluation may be required.  Furthermore, observed changes may have occurred in the student's performance since previous assessment, or new medication may have been prescribed or discontinued since the previous assessment was conducted.  In such cases, it will be necessary to update the evaluation report.  The update must include a detailed assessment of the current impact of the ADHD, an interpretive summary of relevant information (subsection 3G below) and the previous diagnostic report.  If necessary, the Coordinator of Learning Services at Quinnipiac University will recommend what aspects of the documentation need to be updated or augmented.

Comprehensiveness of the Documentation

  a)  Evidence of Early Impairment
      Because ADHD is, by definition, first exhibited in childhood (although it may not have been formally diagnosed) and manifests itself in more than one setting, relevant historical information is essential.  The following must be included in a comprehensive assessment: clinical summary of objective historical information establishing symptomology indicative of ADHD throughout childhood, adolescence and adulthood as garnered from transcripts, report cards, teacher comments, tutoring evaluations, past psychoeducational testing, and third party interviews when available.

  b)  Evidence of Current Impairment
      In addition to providing evidence of a childhood history of an impairment, the following areas must be investigated:

      (1) Statement of Presenting Problem  A history of the student's presenting attentional symptoms must be provided, including evidence of ongoing impulsive/hyperactive or inattentive behaviors that significantly impair functioning in two or more settings.

      (2) Diagnostic Interview  The information collected for the summary of the diagnostic interview must consist of more than self-report, as information from third party sources is critical in the diagnosis of ADHD.  The diagnostic interview with information from a variety of sources must include, but not necessarily be limited to, the following:

              (a) history of presenting attentional symptoms, including evidence of ongoing impulsive/hyperactive or inattentive behavior that has significantly impaired functioning over time;
              (b) developmental history;

31

JD001008

(c)  family history for presence of ADHD and other educational, learning, physical, or psychological difficulties deemed relevant by the examiner;

(d)  relevant medical and medication history, including the absence of a medical basis for the symptoms being evaluated;

(e)  relevant psychosocial history and any relevant interventions;

(f)  a thorough academic history of elementary, secondary, and postsecondary education;

(g)  review of prior psychoeducational test reports to determine whether a pattern of strengths or weaknesses is supportive of attention or learning problems;

(h)  relevant employment history;

(i)  description of current functional limitations pertaining to an educational setting that are presumably a direct result of problems with attention;

(j)  relevant history of prior therapy.

c) Rule Out of Alternative Diagnoses or Explanations

The evaluator must investigate and discuss the possibility of dual diagnoses and alternative or co-existing mood, behavioral, neurological, and/or personality disorders which may confound the diagnosis of ADHD.  This process must include exploration of possible alternative diagnoses, medical and psychiatric disorders as well as educational and cultural factors impacting the student which may result in behaviors mimicking an Attention-Deficit/Hyperactivity Disorder.

d) Relevant Testing

The assessment of the individual must not only establish a diagnosis of ADHD, but must also demonstrate the current impact of the ADHD on the student's ability to function in a classroom and take tests.  In addition, neuropsychological or psychoeducational assessment is important in determining the current impact of the disorder on the student's ability to function at Quinnipiac University.  The evaluator must objectively review and include with the evaluation report relevant background information to support the diagnosis.  If grade equivalents are reported, they must be accompanied by standard scores and/or percentiles.  Test scores or subtest scores alone must not be used as a sole measure for the diagnostic decision regarding ADHD.  Selected subtest scores from measures of intellectual ability, memory functions tests, attention or tracking tests, or continuous performance tests do not in and of themselves establish the presence or absence of ADHD.  Checklists and/or surveys can serve to supplement the diagnostic profile but in and of themselves are not adequate for the diagnosis of ADHD and do not substitute for clinical observations and sound diagnostic judgment.  All data must logically reflect a substantial limitation to learning for which the student is requesting the accommodation.

JD001009

e) Identification of DSM-5 Criteria

According to the DSM-5, "The essential feature of ADHD is a persistent pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development." (p. 61). A diagnostic report must include a review and discussion of the DSM-5 criteria for ADHD, both currently and retrospectively, and specify which symptoms are present. In diagnosing ADHD, it is particularly important to address the following criteria:

(1) symptoms of hyperactivity/impulsivity or inattention that cause impairment which must have been present in childhood;

(2) current symptoms that have been present for at least the past six months;

(3) impairment from the symptoms present in two or more settings (for example, school, work, and home);

(4) clear evidence of significant impairment in social, academic, or occupational functioning;

(5) symptoms which do not occur exclusively during the course of a Pervasive Developmental Disorder, Schizophrenia, or other Psychotic Disorder and are not better accounted for by another mental disorder (e.g., Anxiety Disorder, Dissociative Disorder, or Personality Disorder).

f) A Specific Diagnosis

The report must include a specific diagnosis of ADHD based on the DSM-5 diagnostic criteria. The diagnostician must use direct language in the diagnosis of ADHD, avoiding the use of terms such as "suggests," "is indicative of," or "attention problems." Individuals who report only problems with organization, test anxiety, memory, or concentration in selective situations do not fit the proscribed diagnostic criteria for ADHD. Given that many individuals benefit from prescribed medications and therapies, a positive response to medication by itself does not confirm a diagnosis nor does the use of medication in and of itself either support or negate the need for accommodation.

g) An Interpretive Summary

A well-written interpretative summary based on a comprehensive evaluative process is a necessary component of the documentation. Because ADHD is in many ways a diagnosis which is based upon the interpretation of historical data and observation, as well as other diagnostic information, it is essential that professional judgment be utilized in the development of a summary, which must include:

(1) demonstration of the evaluator's having ruled out alternative explanations for inattentiveness, impulsivity, and/or hyperactivity as a result of psychological disorders, medical disorders, or non-cognitive factors;

(2) indication of how a pattern of inattentiveness, impulsivity, and/or hyperactivity across the life span and across setting are used to determine the presence of ADHD;

JD001010

(3) indication of whether or not the student was evaluated while on medication and whether or not there is a positive response to the prescribed treatment;

(4) indication and discussion of the substantial limitation to learning presented by the ADHD and the degree to which it impacts the student in the learning context for which accommodations are being requested;

(5) indication as to why specific accommodations are needed and how the effects of ADHD symptoms, as designated by the DSM-5, are mediated by the accommodations.

A Rationale For Each Accommodation

The evaluator must describe the impact, if any, of the diagnosed ADHD on a specific major life activity as well as the degree of impact on the student. The diagnostic report must include specific recommendations for accommodations that are realistic and that Quinnipiac University can reasonably provide. A detailed explanation of why each accommodation is recommended must be provided and correlated with specific functional limitations determined through interview, observation, and/or testing. Although prior documentation may have been useful in determining appropriate services in the past, current documentation must validate the need for services based on the student's present level of functioning in an educational setting. A school plan such as an Individualized Educational Program (IEP) or a 504 plan is insufficient documentation in and of itself but can be included as part of a more comprehensive evaluative report. The documentation must include any record of prior accommodations or auxiliary aids, including information about specific conditions under which the accommodations were used (e.g., standardized testing, final exams, licensing, or certification examinations) and whether or not they benefited the student. However, a prior history of accommodations, without demonstration of a current need, does not in itself warrant the provision of a like accommodation. If no prior accommodations were provided, the qualified professional and/or the student must include a detailed explanation as to why no accommodations were used in the past and why accommodations are needed at this time.

Because of the challenge of distinguishing normal behaviors and developmental patterns of adolescents and adults (e.g., procrastination, disorganization, distractibility, restlessness, boredom, academic underachievement or failure, low self-esteem, and chronic tardiness or inattendance) from clinically significant impairment, a multifaceted evaluation must address the intensity and frequency of the symptoms and whether these behaviors constitute an impairment in a major life activity.

Reasonable accommodation(s) may help to ameliorate the disability and to minimize its impact on the student's attention, impulsivity, and distractibility. The determination for reasonable accommodation(s) rests with the Coordinator of Learning Services at Quinnipiac University working in collaboration with the student with a disability and, when appropriate, Quinnipiac University faculty.

JD001011

Confidentiality

Quinnipiac University has a responsibility to maintain confidentiality of the evaluation and may not release any part of the documentation without the student's informed and written consent.


**2.03B3  Recommendations for Parents and Students - ADHD**

1.  For assistance in finding a qualified professional:
    - contact the Coordinator of Learning Services at Quinnipiac University for possible referral sources
    - contact a physician who may be able to refer you to a qualified professional with demonstrated expertise in ADHD

2.  In selecting a qualified professional:
    - ask what experience and training he/she has diagnosing adolescents and adults
    - ask whether he/she has training in differential diagnosis and the full range of psychiatric disorders.  Clinicians typically qualified to diagnose ADHD may include: Clinical Psychologists, Physicians (including Psychiatrists) and Neuropsychologists
    - ask if he/she has ever worked with the Coordinator of Learning Services at Quinnipiac University
    - ask whether you will receive a comprehensive written report

3.  In working with the professional:
    - take a copy of this document to the professional
    - be prepared to be forthcoming, thorough, and honest with requested information

4.  As follow-up to the assessment by the professional:
    - schedule a meeting to discuss the results, recommendations and possible treatment
    - request additional resources, support group information, and publications if you need them
    - maintain a personal file of your records and reports
    - be aware that Quinnipiac University has a responsibility to maintain confidentiality


Assessing Adolescents and Adults with ADHD

The diagnosis of ADHD is strongly dependent on a clinical interview in conjunction with a variety of formal and informal measures. Since there is no one test, or specified combination of tests for determining ADHD, the diagnosis requires a multifaceted approach. Any tests that are selected by the evaluator should be technically accurate, reliable, valid, and standardized on the appropriate norm group. The following list includes five broad domains that are frequently explored when arriving at an ADHD diagnosis. This listing is provided as a helpful resource but is not intended to be definitive or exhaustive.

35

JD001012

1. Clinical interview.  The evaluator should: a) provide retrospective confirmation of ADHD; b) establish relevant developmental and academic markers; c) determine any other co-existing disorders; and d) rule out other problems that may mimic ADHD.  Specific areas to be addressed include: family history; results of a neuro-medical history; presence of ADHD symptoms since childhood; presence of ADHD symptoms in last six months; evidence that symptoms cause a "significant impairment" over time; results of clinical observation for hyperactive behavior, impulsive speech, distractibility; extent of functional impairment across settings (e.g., academic, occupational, social); an accounting for periods in which student was symptom-free; presence of other psychiatric conditions (mood or anxiety disorders, substance abuse, etc.); indication that symptoms are not due to other conditions (e.g., depression, drug use, neuromedical problems); relevant medication history; determination of which remediation approaches and/or compensating strategies are and are not currently effective; determination of what accommodations, if any, have alleviated symptoms in the past or in the present setting.

2. Rating scales.  Self-rater or interviewer-rated scales for categorizing and quantifying the nature of the impairment may be useful in conjunction with other data.  Selected examples include:
- *Wender Utah Rating Scale*
- *Brown Attention-Activation Disorder Scale*
- *Beck Anxiety Inventory*
- *Hamilton's Depression Rating Scale*
- *Conners' Adult ADHD Rating Scales (CAARS)*

3. Neuro-psychological and psycho-educational testing.  Cognitive and achievement profiles may suggest attention or information processing deficits. No single test or subtest should be used as the sole basis for a diagnostic decision.  Acceptable instruments include, but are not limited to:

### Aptitude/Cognitive Ability
- *Wechsler Adult Intelligence Scale - IV (WAIS-IV)*
- *Woodcock-Johnson Psychoeducational Battery - III: Tests of Cognitive Ability*
- *Kaufman Adolescent and Adult Intelligence Test* (KAIT)
- *Stanford-Binet Intelligence Scales, Fifth Edition* (SB5)

### Academic Achievement
- *Woodcock-Johnson Psychoeducational Battery - III: Tests of Achievement*
- *Wechsler Individual Achievement Test – Third Edition* (WIAT-III)
- *Scholastic Abilities Test for Adults (SATA)*
- *Stanford Test of Academic Skills (TASK)*
- or specific achievement tests such as**:**
  - *Nelson-Denny Reading Test*
  - *Stanford Diagnostic Mathematics Test*
  - *Test of Written Language - 4* (*TOWL-4*)
  - *Woodcock Reading Mastery Tests - Third Edition* (*WRMT-III*)

36

JD001013

**Information Processing**
- *Detroit Tests of Learning Aptitude - Fourth Edition* (*DTLA-4*)
- *Detroit Tests of Learning Aptitude - Adult* (*DTLA-A*)
- Information from subtests on *WAIS-IV* or
- *Woodcock-Johnson Psychoeducational Battery - III:*
    *Tests of Cognitive Ability*,
- as well as other relevant instruments, which may be useful when
    interpreted within the context of other diagnostic information.

4. Medical evaluation - Medical disorders may cause symptoms resembling ADHD. Therefore, it may be important to rule out the following: neuroendocrine disorders (e.g., thyroid dysfunction); neurologic disorders; and/or impact of medication on attention if tried, and under what circumstances.

5. Collateral information - Include third party sources which can be helpful to determine the presence or absence of ADHD in childhood.
- Description of current symptoms (e.g., by spouse, teachers, employer).
- Description of childhood symptoms (e.g., parent).
- Information from old school and report cards and transcripts.


**2.03C Psychological Disabilities**

**2.03C1  Brief Overview**
(For more detail please refer to Section 2.03C2:  Criteria of Comprehensive Documentation of Psychological Disabilities.")

Quinnipiac University recognizes that "psychiatric disabilities" is a generic term used to refer to a variety of conditions involving psychological, emotional, and behavioral disorders and syndromes.  The terms psychological disabilities and psychiatric disabilities are used interchangeably in this document.  Students requesting accommodations on the basis of a psychological disability must provide current (within the last year) documentation from a professional who has undergone comprehensive training and has relevant experience in differential diagnosis and the full range of psychiatric disorders (e.g., Licensed Clinical Psychologists, Psychiatrists, Neurologists, Marriage and Family Therapists, Licensed Clinical Social Workers, and other relevantly trained Medical Doctors).  In addition to the requirements specified above, documentation for students requesting accommodations on the basis of a psychological disability must include:

a)  An interview including a description of the presenting problem(s) including any significant developmental, medical, psychosocial and employment; family history; and a discussion of dual diagnosis where indicated.

JD001014

b)  A specific, current (within the last year) psychiatric diagnosis as per the *Diagnostic and Statistical Manual Of Mental Disorders, Fifth Edition,* (DSM- 5) of the American Psychiatric Association (2013), which indicates the nature, frequency, and severity of the symptoms upon which the diagnosis was predicated.  A diagnosis without an explicit listing of current symptoms is not sufficient. Serious Emotional Disturbance (SED) is not an acceptable diagnosis at the postsecondary level.

c)  Primary and Secondary Axis I and Axis II diagnoses.  A measure of functioning using the Global Assessment of Functioning (GAF) Scale in the DSM-5 is highly recommended.  Using the GAF, indicate the student's general, highest and lowest GAF score and describe behaviorally the student's performance at each GAF level using as much detail as is known.

d) Prescribed medications, dosages and schedules which may influence the types of accommodations provided, including any possible side effects.

e) An indication of whether or not the student was evaluated while on medication, and whether or not the prescribed treatment produced a positive response.

f) An integrated summary which: indicates the substantial limitations to major life activities posed by the psychological disability, describes the extent to which these limitations would impact the academic context for which accommodations are being requested, suggests how the specific effects of the psychological disability may be accommodated, and states how the effects of the psychological disability are mediated by the recommended accommodations.

**2.03C2  Criteria for Comprehensive Documentation of Psychological Disabilities**

Introduction

This section provides individuals, schools, professional diagnosticians, and service providers with a comprehensive set of guidelines for documenting psychiatric disabilities.  This documentation is necessary to validate both the presence of a disability and the need for reasonable accommodations for individuals with psychological disabilities.  Quinnipiac University recognizes that "psychiatric disabilities" is a generic term used to refer to a variety of conditions involving psychological, emotional, and behavioral disorders and syndromes.  The terms psychological disabilities and psychiatric disabilities are used interchangeably in this document.  The two official sources designed to outline the criteria used in making these diagnoses are the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition,* (*DSM-5*) and the *International Classification of Diseases Manual, Tenth Revision* (*ICD-10*).  For the purpose of determining eligibility for accommodation, the symptoms must meet the ADA definition of a disability.  This document provides students, parents, professional diagnosticians external to Quinnipiac University, and service providers with a common

38

understanding and knowledge base necessary to establish the impact of psychological disabilities on an individual's educational performance and to validate the need for reasonable accommodations for students attending Quinnipiac University.  The information and documentation that establishes a psychological disability must be comprehensive in order to make it possible for a student to obtain appropriate accommodations in a timely fashion.

This document presents requirements in six important areas: 1) qualifications of the evaluator, 2) recency of documentation, 3) comprehensiveness of the documentation to support the diagnosis of a psychological disability, 4) evidence to establish the functional limitation of the psychological condition supporting the need for accommodations, 5) multiple diagnoses, and 6) confidentiality.  Section 2.03C3 provides recommendations for parents and students to assist them in finding and working with a qualified professional in regard to this document, including suggestions for assessment measures.

Under the Americans with Disabilities Act (ADA) of 1990 and Section 504 of the Rehabilitation Act of 1973, individuals with disabilities are protected from discrimination and may be entitled to reasonable accommodations and equal access to programs and services.  To establish that an individual is covered under the ADA, documentation must indicate that a specific disability exists and that the identified disability substantially limits one or more major life activities.  A diagnosis of a disorder/condition/syndrome in and of itself does not automatically qualify an individual for accommodations under the ADA.  The documentation must also support the request for accommodations, academic adjustments, and/or auxiliary aids.

Terms

Psychological disabilities: Comprise a range of conditions characterized by emotional, cognitive, and/or behavioral dysfunction.  Diagnoses are provided in the *DSM-5* or the *ICD-10*. Note that not all conditions listed in the *DSM-5* are disabilities, or even impairments for purposes of the ADA.  Therefore, a diagnosis of a disability does not, in and of itself, meet the definition of a disability necessitating reasonable accommodations under the ADA or Section 504 of the Rehabilitation Act of 1973.

Major life activity: Examples of major life activities include walking, sitting, standing, seeing, hearing, speaking, breathing, learning, working, caring for oneself, and other similar activities.  In particular, individuals with psychological disabilities may also experience thinking disorders/psychotic disorders that may interfere with the learning process (e.g., reading, writing, and calculating).

Functional limitation: A substantial impairment in the individual's ability to function in the condition, manner, or duration of a required major life activity.

JD001016

<u>Documentation Requirements –  Psychological Disabilities</u>

Qualifications of the Evaluator

Professionals conducting assessments, rendering diagnoses of psychological disabilities, and making recommendations for appropriate accommodations must be qualified to do so.  It is essential that professional qualifications include both comprehensive training and relevant expertise in differential diagnosis of psychological disorders and appropriate licensure/certification.  Qualified evaluators are defined as those licensed individuals who are qualified to evaluate and diagnose psychological disabilities or who may serve as members of the diagnostic team.  These individuals or team members may include: Licensed Clinical Psychologists, Licensed Clinical Social Workers, Psychiatrists, Advanced Practice Registered Nurses or Clinical Nurse Specialists in Psychiatry, and other relevantly trained Medical Doctors. Documentation may be provided from more than one source when a clinical team approach consisting of a variety of educational, medical, and counseling professionals has been used.

Diagnoses of psychological disabilities documented by family members will not be accepted due to professional and ethical considerations even when the family members are otherwise qualified by virtue of training and licensure/certification.  The issue of dual relationships as defined by various codes of professional ethics should be considered in determining whether a professional is in an appropriate position to provide the necessary documentation.

Finally, the name, title, and credentials of the qualified professional writing the report should be included.  Information about license or certification, as well as the area of specialization, employment, and state or province in which the individual practices, should also be clearly stated in the documentation.  All reports should be in English, typed or printed on professional letterhead, dated, and signed.

Recency of Documentation

Due to the changing nature of psychological disabilities, it is essential that a student provide recent and appropriate documentation from a qualified evaluator.  Since reasonable accommodations are based on the current impact of the disability, the documentation must address the student's current level of functioning and the need for accommodations (e.g., due to observed changes in performance or due to medication changes since previous assessment).  If the diagnostic report is more than one year old, the student must also submit a letter from a qualified professional that provides an update of the diagnosis, a description of the student's current level of functioning during the preceding year, and a rationale for the requested reasonable accommodations.

JD001017

Comprehensiveness of the Documentation

In most cases, documentation must be based on a comprehensive diagnostic/clinical evaluation that adheres to the guidelines outlined in this document. The diagnostic report must include the following components:  1. a specific diagnosis;  2. a description of current functional limitations in the academic environment as well as across other settings;  3. relevant information regarding medications expected to be in use and their anticipated impact on the student in this setting;  4. relevant information regarding current treatment;  5. a specific request for accommodations with accompanying rationale.

    a)  Historical Information, Diagnostic Interview, and/or Psychological Assessment
        The information collected for the summary of the diagnostic interview must include, but is not limited to, the following:
            (1)  history of presenting symptoms;
            (2)  duration and severity of the disorder;
            (3)  relevant, developmental, historical, and familial data;
            (4)  relevant medical and medication history, including the student's current medication regimen compliance, side effects (if relevant), and response to medication;
            (5)  a description of current functional limitations in different settings with the understanding that a psychological disorder usually presents itself across a variety of settings other than just the academic domain and that its expression is often influenced by context-specific variables (e.g., school-based performance);
            (6)  a description of the expected progression or stability of the impact of the condition over time as relevant to the student's performance;
            (7)  information regarding the kind of treatment and duration/consistency of the therapeutic relationship as relevant to test taking performance.

    b)  Specific Diagnosis
        The report must include a specific diagnosis based on the *DSM-5* or *ICD-10* diagnostic criteria and include the specific diagnostic section in the report with a numerical and nominal diagnosis from *DSM-5* or *ICD-10*.  Evaluators are encouraged to cite the specific objective measures used to help substantiate the diagnosis. The evaluator must use definitive language in the diagnosis of a psychiatric disorder, avoiding such wording as "suggests," "has problems with," or "may have emotional problems."

    c)  Rule Out of Alternative Diagnoses or Explanations
        The evaluator must also investigate and rule out the possibility of other potential diagnoses involving neurological and/or medical conditions or substance abuse, as well as educational, linguistic, sensorimotor, and cross-cultural factors that may result in symptoms mimicking the purported psychological disability.

JD001018

Recommendations for Accommodation

The evaluator must describe the degree of impact of the diagnosed psychological disorder on a specific major life activity, as well as the degree of impact on the student.  A link must be established between the requested accommodations and the functional limitations of the student that are pertinent to the anticipated academic and residential settings.  Accommodations will be provided only when a clear and convincing rationale is made for the necessity of the accommodation.  A diagnosis, in and of itself, does not automatically warrant approval of requested accommodations.  For example, test anxiety alone is not a sufficient diagnosis to support requests for accommodations.  Given that many students may perceive that they might benefit from extended time in testing situations, evaluators must provide specific rationales and justifications for the accommodation.  A prior history of accommodations, without demonstration of current need, does not, in and of itself, warrant the provision of accommodations.  If there is no prior history of accommodations, the evaluator and/or the student must include a detailed explanation of why accommodations were not needed in the past, and why they are now currently being requested.  Psychoeducational, neuropsychological or behavioral assessments are often necessary to support the need for reasonable academic accommodations based on the potential for psychological disorders to interfere with cognitive performance.

Multiple Diagnoses

Multiple diagnoses may require a variety of accommodations beyond those typically associated with one diagnosis, and therefore the documentation must adhere to Quinnipiac University's policy for other diagnoses.

Confidentiality

Quinnipiac University has a responsibility to maintain confidentiality of the evaluation and may not release any part of the documentation without the student's informed and written consent.  Furthermore, to safeguard the confidentiality of individuals with psychological disabilities, evaluators may withhold or redact any portion of the documentation that is not directly relevant to Quinnipiac University's criteria for establishing a rationale for requested reasonable accommodations.

## 2.03C3  Recommendations for Parents and Students - Psychological Disabilities

1.  For assistance in finding a qualified professional [See Section 2.03C2I for definition of a qualified professional]:
   - contact the Coordinator of Learning Services at Quinnipiac University for possible referral sources
   - contact your primary care physician who may be able to refer you to a qualified professional with demonstrated expertise in psychological disorders

JD001019

2. In selecting a qualified professional:
   - ask what experience and training he/she has had diagnosing adolescents and adults
   - ask whether he or she has training in differential diagnosis and the full range of psychological disorders. Clinicians typically qualified to diagnose psychiatric disabilities include: Licensed Clinical Psychologists, Licensed Clinical Social Workers, Psychiatrists, Advanced Practice Registered Nurses or Clinical Nurse Specialists in Psychiatry and other relevantly trained Medical Doctors
   - ask if he/she has ever worked with the Coordinator of Learning Services at Quinnipiac University
   - ask whether you will receive a comprehensive written report

3. In working with the professional:
   - take a copy of these guidelines to the professional
   - be prepared to be candid, thorough, and honest in providing requested information

4. As follow-up to the assessment by the professional:
   - schedule a meeting to discuss the results, recommendations, and possible treatment
   - request additional resources, support group information, and publications if you need them
   - maintain a personal file of your records and reports
   - be aware that Quinnipiac University has a responsibility to maintain confidentiality

Assessing Adolescents and Adults with Psychological Disorders

This subsection contains selected examples of tests and instruments that may be used to supplement the clinical interview and support the presence of functional limitations. All tests used should be current and have sufficient reliability, validity, and utility for the specific purposes for which they are being employed. All tests should also be normed on relevant populations, and the results should be reported in standard scores and/or percentile ranks. Tests that have built-in validity scales or indicators are preferred over those that do not.

1. Neuropsychological and Psychoeducational Testing:
   Cognitive, achievement, and personality profiles may suggest attention or information-processing deficits, but no single test or subtest should be used solely to substantiate a diagnosis. Acceptable instruments include, but are not limited to:

   **Aptitude/Cognitive Ability**
   - *Wechsler Adult Intelligence Scale-IV* (WAIS-IV)
   - *Woodcock-Johnson Psychoeducational Battery-III - Tests of Cognitive Abilities*
   - *Kaufman Adolescent and Adult Intelligence Test* (KAIT)
   - *Stanford-Binet Intelligence Scales, Fifth Edition* (SB5)

43

JD001020

**Academic Achievement**
- *Woodcock-Johnson Psychoeducational Battery-III - Tests of Achievement*
- *Wechsler Individual Achievement Test-III* (WIAT-III)
- *Stanford Test of Academic Skills* (TASK)
- *Scholastic Abilities Test for Adults* (SATA)
- or specific achievement tests, such as:
  - *Nelson-Denny Reading Test*
  - *Woodcock Reading Mastery Tests - Third Edition* (WRMT-III)
  - *Test of Written Language-4* (TOWL-4)
  - *Stanford Diagnostic Mathematics Test*

**Information Processing**
- Information from subtests on the *WAIS-IV* or
- *Woodcock-Johnson Psychoeducational Battery-III - Tests of Cognitive Abilities*
- *Detroit Tests of Learning Aptitude-4* (DTLA-Adult)
- *Wechsler Memory Scale IV*
- *Rey-Osterrieth Complex Figure Test*
- *Stroop Interference Test*
- *Trail Making Test*
- *Wisconsin Card Sorting Test*
- *Halstead-Reitan Neuropsychological Test Battery*
- *California Verbal Learning Test-II*
- *Continuous Performance Test*
- *Category Test*
- Other relevant instruments, may be useful

2. **Personality Tests**

Acceptable instruments may include, but are not limited to:
- *Minnesota Multiphasic Personality Inventory-Adolescent-2* (MMPI-2)
- *Thematic Apperception Test*
- *Millon Adolescent Personality Inventory*
- *Millon Clinical Multiaxial Personality Inventory-III*
- *NEO Personality Inventory-Revised*
- *Personality Assessment Inventory*
- *Sixteen Personality Factor Questionnaire*

44

JD001021

3. **Rating Scales**:

> Self-rater or interviewer-rated scales for categorizing and quantifying the nature of the impairment may be useful in conjunction with other data, but no single test or subtest should be used solely to substantiate a diagnosis.
>
> Acceptable instruments include, but are not limited to:
>
> - *Beck Anxiety Inventory*
> - *Beck Depression Inventory*-II
> - *Brief Psychiatric Rating Scale*
> - *Burns Anxiety Inventory*
> - *Burns Depression Inventory*
> - *Children's Depression Inventory*
> - *Hamilton Anxiety Rating Scale*
> - *Hamilton Depression Rating Scale*
> - *Inventory to Diagnose Depression*
> - *Multidimensional Anxiety Scale for Children*
> - *Profile of Mood States*
> - *State-Trait Anxiety Inventory*
> - *Taylor Manifest Anxiety Scale*
> - *Yale-Brown Obsessive-Compulsive Scale*

## 2.03D  Acquired Brain Injury (ABI)/Traumatic Brain Injury (TBI)

Students requesting accommodation on the basis of an ABI/TBI must provide documentation (in most cases within three years, recent ABI/TBI within one year) from a professional who has undergone comprehensive training and has relevant experience in the assessment of ABI/TBI in adolescents and/or adults (e.g. Neuropsychologists, Clinical or Educational Psychologists). In addition to the requirements specified above, documentation for students requesting accommodations on the basis of an ABI/TBI must include but not be limited to:

a)  A neuropsychological evaluation containing assessments of intellectual, conceptual and cognitive competence; academic skills; personality status; motor facility of all extremities; sensory, perceptual and processing efficiency; visual, auditory and tactile facility; speech, language and communication ability; and evaluation of memory and attention.

b)  Utilization of particular evaluation techniques must be at the discretion of the evaluator. Measures, such as the following, will be expected to appear in the selected battery: *Bender-Gestalt*, *Halstead Reitain Battery* (or selected parts), selected parts of the *Illinois Test of Psycholinguistic Ability* (or other psycholinguistic tests); *Detroit Tests of Learning Aptitude-4* or *Detroit Tests of Learning Aptitude - Adult*; *Luria Nebraska Battery* (or selected parts); *Peabody Individual Achievement Test* (or other adult individual achievement tests); *Woodcock Reading Mastery Tests - III*; *Woodcock-Johnson Psychoeducational Battery-III*; and the *Spache Written Language Assessment*.

JD001022

c)  An interview including a description of the presenting problem(s); developmental, medical, psychosocial and employment histories; family history (including primary language of the home and the student's current level of English fluency); and a discussion of dual diagnosis where indicated.

d)  An integrated summary which: indicates the substantial limitations to major life activities posed by the specified brain injury, describes the extent to which these limitations impact the academic context for which accommodations are being requested, suggests how the specific effects of the brain injury may be accommodated, and states how the effects of the brain injury are mediated by the recommended accommodations.


**2.03E  Sensory Conditions**

1. Blindness or Low Vision.
   In addition to the requirements specified above, documentation for students requesting accommodations on the basis of low vision or blindness must include:
   a. An ocular assessment or evaluation from an Ophthalmologist
   b. A low-vision evaluation of residual visual function, when appropriate
   c. Suggestions as to how the functionally limiting manifestations of the disabling condition(s) may be accommodated

2. Deaf/Hard of Hearing/Hearing Impaired
   In addition to the requirements specified above, documentation for students requesting accommodations on the basis of being deaf or hard of hearing must include:
   a. An audiological evaluation and/or audiogram
   b. An interpretation of the functional implications of the diagnostic data and hearing aid evaluation, when appropriate
   c. Suggestions as to how the functionally limiting manifestations of the disabling condition(s) may be accommodated

JD001023

**2.03F  Organic Medical Conditions**

In addition to the requirements specified above, documentation for students requesting accommodations on the basis of physical mobility, physical dexterity, or chronic health-related disabilities must include:
1. An identification of the disabling condition(s)
2. An assessment of the functionally limiting manifestations of the condition(s) for which accommodations are being requested
3. Degree and range of functioning for a chronic or progressive condition
4. Prescribed medications, dosages and schedules which may influence the types of accommodations provided, including any possible side effects
5. Suggestions as to how the functionally limiting manifestations of the disabling condition(s) may be accommodated


**2.03G  Other Disabilities Not Covered Above**

In addition to the requirements specified above, students and professionals are advised to discuss the requirements of appropriate documentation for students requesting accommodations on the basis of other disabilities with the Coordinator of Learning Services.

47

# Section 3

# ADA/504

# Grievance Procedure

# Quinnipiac University

JD001025

**3.01 Grievances**

Students who believe they have been subjected to discrimination on the basis of disability or have been denied access to services or accommodations required by law, have the right to use this Grievance Procedure.  In general, the Grievance Procedure is designed to address disputes concerning the following:

    A. Disagreements regarding a requested service, accommodation, or modification of a University practice or requirement;
    B. Inaccessibility of a program or activity;
    C. Harassment or discrimination on the basis of disability;
    D. Violation of privacy in the context of disability

Undergraduate and graduate students (excepting students of the School of Law) with inquiries regarding relevant Quinnipiac University policies or procedures should be directed to the Coordinator of Learning Services, (203-582-5390), whose office is located in the North wing of the Arnold Bernhard Library. Students of the Quinnipiac School of Law should direct inquires to the Associate Dean for Students, (203-582-3220), whose office is located in the School of Law and Education, 310K.

**3.02 Informal Procedure**

In the event an individual believes that he/she has received discriminatory treatment and has been unable to resolve the issue with the staff identified above, a student may follow an informal process to resolve the issue.  Undergraduate and graduates working with the Coordinator of Learning Services may contact the Associate Vice President of Retention and Academic Success (203-582-5338).  Students of the School of Law working with the Associate Dean of Students (Law) should contact the Dean of the School of Law.  Contact with the appropriate person should be made within fifteen (15) days after the alleged discriminary act or incident.  Discretion may be exercised in the event contact is made after the fifteen (15) day period.

During this stage in the procedure, the complaining party is designated the "aggrieved individual" and the person(s) whom the aggrieved individual is complaining against should be designated the "alleged discriminating party."

Neither the Associate Vice President of Retention and Academic Success nor the Dean of the School of Law will serve as an advocate for either the aggrieved individual or the alleged discriminating party, but merely process the allegation(s) and attempt to informally resolve the differences between the two parties within fifteen (15) days after being contacted by the aggrieved individual.

If the aggrieved individual is not satisfied with the outcome of the informal process, he/she may file a formal complaint within (15) days after the conclusion of the attempt to informally resolve the differences.

    As outlined above, the informal process, theoretically, should not exceed forty-five (45) days.

49

**3.03 Formal Procedure**

**A.  Initial Process**

The aggrieved individual initiates the formal procedure by filing a formal complaint in writing to the Vice President of Academic Affairs, whose office is located in the Center for Communications and Engineering LA 315.  Once the complaint is filed, the status of the aggrieved individual changes to that of "complainant."  The Vice President of Academic Affairs may assist the complainant in properly filing a complaint; however, it is important that the Vice President of Academic Affairs not serve as an advocate for the complainant.  The formal complaint may be a simple written statement, but should include the following:

1.  The complainant's name, address, e-mail address and phone number;
2.  A full description of the problem;
3.  A statement of the remedy requested;
4.  A statement setting forth the outcome of the informal procedure describe above.

**B.  Investigation**

Once the complaint has been properly filed, the Vice President of Academic Affairs who shall serve as grievance officer, shall promptly initiate an investigation.  In undertaking the investigation, the Vice President may interview, consult with and/or request a written response to the issues raised in the grievance from any individual the Vice President believes to have relevant information, including faculty, staff and students.

The complainant and the party against whom the grievance is directed shall have the right to have a representative.  Each party shall indicate whether he or she is to be assisted by a representative and if, so, the name of that representative.  For purposes of this procedure, an attorney is not an appropriate representative.

Upon completion of the investigation, the Vice President will prepare and transmit to the student, and to the party against whom the grievance is directed, a final report containing a summary of the investigation, written findings and a proposed disposition. This transmission will be expected within thirty (30) calendar days of the filing of the formal complaint.  The deadline may be extended by the Vice President for good cause. The final report shall also be provided, where appropriate, to any University officer whose authority will be needed to carry out the proposed disposition.

JD001027

**C.  Appeal**

Within ten (10) calendar days of the issuance of the final report, the complainant or the party against whom the grievance is directed may appeal the Vice President's determination to the Executive Vice President and Provost , located in the North wing of the Arnold Bernhard Library N117, fax number (203) 582-8968.  The written request for review must specify the particular substantive and or procedural basis for the appeal, and must be made on grounds other than general dissatisfaction with the proposed disposition. Furthermore, the appeal must be directed only to issues raised in the formal complaint as filed or to procedural errors in the conduct of the grievance procedure itself, and not to new issues.

A copy of the Executive Vice President and Provost's written decision will be expected within thirty (30) calendar days of the filing of the appeal and shall be sent to the parties, the grievance officer and, if appropriate, to the University officer whose authority will be needed to carry out the disposition.  The deadline may be extended by the Executive Vice President and Provost for good cause. The decision of the Executive Vice President and Provost on the appeal is final.

This formal process does not preclude an individual's right to file a formal complaint with the Office for Civil Rights of the United States Department of Education, or any other Federal agency.

51

JD001028

**Appendix 1**
**General Recommendations for Students with Disabilities and Parents**

**In finding a qualified professional:**
- contact the Coordinator of Learning Services at Quinnipiac University to discuss documentation needs and possible referral sources
- discuss your future plans with the Coordinator and, if additional documentation is required, seek assistance in identifying a qualified professional

**In selecting a qualified professional:**
- ask what his or her credentials are
- ask what experience he or she has had working with adolescents and adults with disabilities
- ask if he or she has ever worked with the Coordinator of Learning Services at Quinnipiac University
- ask whether you will receive a comprehensive written report

**In working with the professional:**
- take a copy of this document to the professional
- encourage him or her to clarify questions with the Coordinator of Learning Services
- be prepared to be forthcoming, thorough and honest with requested information
- know that professionals must maintain confidentiality with respect to your records and testing information

**In following up the assessment by the professional:**
- request a written copy of the assessment report
- request the opportunity to discuss the results and recommendations
- request additional resources, support group information, and publications if you need them
- maintain a personal file of your records and reports
- be aware that Quinnipiac University has a responsibility to maintain confidentiality

52

JD001029

# Appendix 2

## Resources and Organizations

Anxiety Disorder Association of America (ADAA)
11900 Parklawn Drive, Suite 100
Rockville, MD 20852
301-231-9350 voice
301-231-7392 fax
http://www.adaa.org
The ADAA promotes the prevention and cure of anxiety disorders and works to improve the lives of those who have them.

Association on Higher Education and Disability (AHEAD)
107 Commerce Center Drive, Suite 204
Huntersville, NC 28078
704-947-7779 voice/TTY
704-948-7779 fax
http://www.ahead.org
AHEAD sponsors numerous training programs, workshops, publications, and conferences for professionals in the field of higher education disability.

Children and Adults with Attention-Deficit/Hyperactivity Disorder (CHADD)
8181 Professional Place, Suite 150
Landover, MD 20785
1-800-233-4050 voice - toll free
301-306-7070 voice
301-306-7090 fax
http://www.chadd.org
CHADD is a national organization with over 32,000 members and more than 500 chapters nationwide that provides support and information for parents of children with ADHD and adults with ADHD.

The Council for Exceptional Children (CEC)
1920 Association Drive
Reston, VA 22091-1589
703-620-3660 voice
703-264-9446 TTY
703-264-9494 fax
http://www.cec.sped.org
The CEC is the largest international professional organization committed to improving educational outcomes for individuals with disabilities.

JD001030

Learning Disabilities Association of America (LDA)
4156 Library Road
Pittsburgh, PA 15234-1349
412-341-1515 voice
412-344-0224 fax
http://www.ldanatl.org
LDA is the largest nonprofit volunteer organization advocating for individuals with learning disabilities. LDA has more than 600 local chapters and affiliates in 50 states, Washington, DC, and Puerto Rico. LDA seeks to educate individuals with learning disabilities and their parents about the nature of the disabilities and inform them of their rights.

National Center for Learning Disabilities (NCLD)
381 Park Avenue South, Suite 1401
New York, NY 10016
212-545-7510 voice
212-545-9665 fax
Toll-free Information and Referral Service: 1-888-575-7373
http://www.ncld.org
NCLD provides the latest information on learning disabilities and resources available to parents, professionals, and adults with learning disabilities. Specific information about learning disabilities, as well as local referrals to schools, clinics, camps, colleges' parent support groups, and other sources of help are available.

National Depressive and Manic-Depressive Association (NDMDA)
730 North Franklin Street, Suite 501
Chicago, IL 60610-7204
1-800-826-3632 voice – toll free
312-642-0049 voice
312-642-7243 fax
http://www.ndmda.org
The NDMDA is a nonprofit organization aimed at helping people with depressive spectrum illnesses and their families.

Obsessive-Compulsive Foundation, Inc. (OCF)
337 North Hill Road
North Branford, CT 06471
203-315-2190 voice
203-315-2196 fax
http://www.ocfoundation.org
The OCF is an international not-for-profit organization composed of people with OCD and related disorders, their families, friends, professionals, and other concerned individuals.

The Internet Mental Health Web page, http://www.mentalhealth.com is another very good resource.

JD001031

[The material contained in the document *Criteria for Comprehensive Documentation of Disabilities in Adolescents and Adults at Quinnipiac University* was produced following guidelines developed by the Consortium on ADHD Documentation, the AHEAD Ad Hoc Committee on Learning Disabilities, Educational Testing Service's Task Force on Psychiatric Disabilities, and CT AHEAD Ad Hoc Committee.
The members of these committees are listed below.

**The Consortium on ADHD Documentation**
Loring Brinckerhoff, Chairperson, Educational Testing Service
Kim M. Dempsey, Law School Admission Council
Cyndi Jordan, University of Tennessee - Memphis
Shelby R. Keiser, National Board of Medical Examiners
Joan M. McGuire, University of Connecticut - Storrs
Nancy W. Pompian, Dartmouth College
Louise Russell, Harvard University

**AHEAD Ad Hoc Committee on Learning Disabilities**
Members consisted of those mentioned above and included Catherine Nelson, Educational Testing Services

**ETS Office of Disability Policy**
Sheree Johnson-Gregory, Director and Loring C. Brinckerhoff, Disability Accommodations Specialist
Task Force on Psychiatric Disabilities
Arunas J. Kuncaitis, Co-chair, Collaborations in Clinical Care, Canton, Massachusetts
Stuart S. Segal, Co-chair, University of Michigan
Phyllis Brown-Richardson, Long Island University – Brooklyn Campus
Patricia Carlton, The Ohio State University
Cyndi Jordan, Hutchison School, University of Tennessee Center for Health Sciences
Nancy Pompian, Dartmouth College Louise
H. Russell, Harvard University Deborah E.
Taska , Arizona State University

**The Connecticut Association on Higher Education and Disability (CT AHEAD)**
**Disability Documentation Guidelines Ad Hoc Committee**
Patricia Anderson, University of Connecticut-Storrs; Evette Corujo-Aird, Naugatuck Valley Community College;
Maureen Crowley, University of Connecticut-Storrs; Jane Currie, Farmington Public Schools;
Lauri DiGalbo, Bureau of Rehabilitation Services; Linda Domenitz, Capital Community College;
Susan Duques, Connecticut College; Cathy Felice, Tunxis Community College;
Gail Hammond, Manchester Community College; Karen Halliday, Connecticut State Department of Education;
Joan M. McGuire, University of Connecticut-Storrs; Louise Myers, Naugatuck Valley Community College;
Laurie Novi, Naugatuck Valley Community College; Pamela Starr, Eastern Connecticut State University;
Angelo Vespe, Stratford School District; Carol Young, Central Connecticut State University.

JD001032